# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 09-00766-TLM |
| CHRISTIAN HEROLD BOURGUIGNON ) | |
| and TERRA ALVORD BOURGUIGNON, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

Pursuant to § 521(a)(4)[1], the chapter 7 trustee, Jeremy J. Gugino ("Trustee") requests turnover of estate property consisting of amounts in Debtors' 26 U.S.C. § 529(b) college education account. Debtors object to Trustee's motion. Among other arguments, Debtors claim the funds in the account are excluded from property of the estate under § 541(b)(6), a provision added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA").

The motion and objection came on for hearing on September 3, 2009. The parties stipulated to several facts and to agreed exhibits, presenting no other evidence. After considering the parties' oral and written arguments on such

---

[1] All chapter, section and other statutory citations are to the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532, unless otherwise indicated. Section 521(a)(4) requires debtors to "surrender to the trustee all property of the estate."

MEMORANDUM OF DECISION - 1

record, and the relevant case law, the Court concludes Trustee's motion will be granted. The following constitute the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 9014 and 7052.

**FACTS**

On March 10, 2009, Christian Bourguignon opened a Scholar's Edge, New Mexico college savings account created under New Mexico's Education Trust Act, N.M. Stat. Ann. § 21-21K-3 *et seq.*, establishing and governing such accounts in accord with 26 U.S.C. § 529(b).[2] Debtors' eldest daughter is the designated beneficiary on the College Account. Debtors deposited an initial $14,500.00 into the College Account. Patricia Bourguignon, Christian's mother, thereafter contributed $40,000.00. On March 27, 2009, approximately two weeks after opening the College Account, Debtors filed their chapter 7 petition.

Debtors' statement of financial affairs ("SOFA") disclosed a "529 college fund for children" as "property owned by another person that debtor holds or controls." Doc. No. 14 at SOFA question 14.[3] Debtors did not list the College

---

[2] A number of documents regarding this account's creation and status were introduced as Exhibit Nos. 201 - 206, and they are collectively referred to as the "College Account."

[3] The Court takes judicial notice of its files and records under Fed. R. Evid. 201, and treats the portions of those records executed by Debtors under penalty of perjury as evidentiary admissions under Fed. R. Evid. 801(d). *In re Webb*, 03.1 I.B.C.R. 25, 26, 2002 WL 33939737, at *4 (Bankr. D. Idaho 2002).

MEMORANDUM OF DECISION - 2

Account on schedule B.[4] Nor did they claim an exemption in the College Account on schedule C.

The parties agree that all the funds in the College Account are either prepetition contributions made within a year of the filing (*i.e.*, the $54,500 contributed in March, 2009, described above) or interest earned on those prepetition contributions.

**DISCUSSION AND DISPOSITION**

    **A.    26 U.S.C. § 529 accounts generally**

The Internal Revenue Code exempts qualified tuition programs from taxation as provided in Title 26. *See* 26 U.S.C. § 529(a). The Internal Revenue Code defines a qualified tuition program as "a program established and maintained by a State or agency or instrumentality thereof or by 1 or more eligible educational institutions . . . ." 26 U.S.C. § 529(b). There are two types of qualified tuition programs: a prepaid tuition plan or a college savings plan. *See* 26 U.S.C. § 529(b)(1)(A). As the U.S. Securities and Exchange Commission notes in one of its publications, "All fifty states and the District of Columbia sponsor at least one

---

[4] Section 521(c), added by BAPCPA, requires debtors to "file with the court a record of any interest that a debtor has . . . under a qualified State tuition program" as defined in § 529(b)(1) of the Internal Revenue Code. Official Form 6B implements this command by requiring the disclosure and listing of "Interests in an education IRA . . . or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c)." *Id.* at schedule B, item 11.

MEMORANDUM OF DECISION - 3

type of 529 plan."[5] Most state sponsored 529 programs do not have a residency requirement. *See* SEC Publication at 2. Thus individuals may participate in any state's 529 program. However, certain benefits, including state income tax deductions or credits, may only be available to those that participate in a 529 plan sponsored by their state of residence.[6]

Congress created the tax exemption found in 26 U.S.C. § 529 in order to encourage taxpayers to save for future college expenses. *See* S. Rep. No. 104-281 at 105-107 (1996) (stating the reason for the change in the law is to "clarify the tax treatment of State-sponsored prepaid tuition programs and educational savings programs in order to encourage persons to save to meet post-secondary educational expenses"); *see also* SEC Publication at 1.

### B. 529 accounts as property of a bankruptcy estate

#### 1. The College Account is property of the estate under § 541(a)(1)

Section 541(a) defines property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case" except as

---

[5] *See* http://www.sec.gov/investor/pubs/intro529.htm (last visited September 23, 2009) (hereinafter "SEC Publication"). Idaho, for example, has set up the Idaho College Savings Program (commonly known as "IDEAL"). *See* I.C. §§ 33-5401 to 33-5410.

[6] Exemptions from creditor collection activities may be another residency-based benefit. *See*, *e.g.*, *In re McFarland*, 04.3 I.B.C.R. 136, 137, 2004 WL 4960367, *2 (Bankr. D. Idaho 2004) (noting that Idaho Code § 11-604(A) "expressly includes within its scope the college savings program established by Chapter [54], Title 33 of the Idaho Code" and thus determining the debtors' claim of exemption in their IDEAL account was proper); *but see In re Sanchez*, 2006 WL 395225 (Bankr. D. Mass. Feb. 14, 2006) (finding that Massachusetts provides no exemption for any 529 plan).

MEMORANDUM OF DECISION - 4

provided in subsections (b) and (c)(2). Under this definition, the College Account is property of the estate. Here, the parties by their stipulation of facts agree Christian Bourguinon is the owner of the College Account.[7] As the plan description states, "[t]he Account and all rights under the Participation Agreement belong to . . . the Account Owner and not to the Designated Beneficiary. [The Account Owner] retain[s] control of how and when Account assets are used." Ex. 201 at 9. The description further states that "[t]he Account Owner owns all Contributions made to an Account as well as all earnings credited to the Account. Individuals . . . other than the Account Owner that contribute funds to an Account will have no subsequent control over the Contributions." *Id* at 13. As the account owner, Debtors may terminate the account at any time. *Id.* at iv. Moreover, if Debtors terminate the College Account, the account balance will be distributed to them. *Id*.

Based on these facts, the Court concludes Debtors had a legal interest in the College Account as of the commencement of the case, and it is property of the

---

[7] As noted, Debtors' SOFA asserted that their minor children were the "owners" of the 529 account, and they were simply in possession or control of the account. Debtors offered no evidence to support the contention that the College Account was their children's property. In their brief, Debtors cited *In re Quackenbush*, 339 B.R. 845 (Bankr. S.D.N.Y. 2006), and argued they were mere custodians of the College Account owned by their daughter. While Debtors did not further advance this argument at hearing, and appear by their factual stipulation with Trustee to concede they are the account owners, the Court nevertheless notes that *Quackenbush* is easily distinguishable. That case involved a New York Uniform Gift to Minors Act trust account, not a § 529(b) account. 339 B.R. at 846-47. The differences between these two types of accounts are significant.

MEMORANDUM OF DECISION - 5

estate. The question next turns to exclusion from property of the estate under either § 541(b) or § 541(c)(2).

### 2. The College Account is not excluded by § 541(c)(2)

Section 541(c) states:

(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law–

  (A) that restricts or conditions transfer of such interest by the debtor; or

  (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Debtors' argument that § 541(c)(2) is applicable to the College Account fails. That exception deals with restrictions on transfer "of a *beneficial* interest of the *debtor* in a *trust*[.]" There is inadequate proof of a qualifying trust interest of Debtors. Debtors are not the "beneficiaries" of the College Account; Christian Bourguignon is, instead, the account owner. Debtors' daughter is the designated beneficiary.

MEMORANDUM OF DECISION - 6

Even if Debtors arguably have a contingent, beneficial interest in the College Account because either could potentially become a beneficiary,[8] the College Account does not contain the requisite anti-alienation and anti-assignment provisions required under nonbankruptcy law and recognized by § 541(c)(2). As this Court stated in *Murphy v. Northern Trust Co. (In re Ballis)*, 05.2 I.B.C.R. 32, 34 (Bankr. D. Idaho 2005), § 541(c)(2) "exclude[s] and remove[s] from property of the estate the beneficial interests [of the debtor] in a trust otherwise captured by § 541(a) *if* there exists a restriction on transfer of such an interest enforceable under nonbankruptcy law at the time Debtor files bankruptcy." In other words, if the trust is a valid spendthrift[9] or similar trust, limiting access to the trust corpus by the beneficiary and the beneficiary's creditors, it will be excluded from property of that beneficiary's estate. *See Patterson v. Shumate*, 504 U.S. 753, 757-60 (1992) (finding an ERISA qualified pension plan containing a provision that "[n]o benefit, right or interest of any participant shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge,

---

[8] Under the participation agreement, "the Account Owner may change the Designated Beneficiary of the Account named on the Enrollment Application, provided the new Designated Beneficiary is a Member of the Family, within the meaning of the [Internal Revenue] Code, of the current Designated Beneficiary." Ex. 201 at iii.

[9] A spendthrift trust is:

> A trust that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest; a trust by the terms of which a valid restraint is imposed on the voluntary or involuntary transfer of the beneficiary's interest.

Black's Law Dictionary 1552 (8th ed. 2004)

MEMORANDUM OF DECISION - 7

seizure, attachment or other legal, equitable or other process" to be excluded from property of the estate under § 541(c)(2) (quotation marks omitted)); *In re Petruzzelli*, 04.3 I.B.C.R. 108, 109 (Bankr. D. Idaho 2004).

Debtors' lack of ability to direct the investments of the funds in the College Account is not a sufficient restriction for § 541(c)(2) purposes. In addition, the prohibition on the account owner's or beneficiary's use of the College Account as collateral for any purpose is also not sufficient to place the College Account within § 541(c)(2). Moreover, the language restricting the account owner's ability to assign or transfer any interest in the College Account is subject to the proviso: "(except through a change in Account Owner or Designated Beneficiary in accordance with the Plan's rules)[,]" and it is not an adequate restriction for § 541(c)(2) purposes. *Id.* at 13.[10] These noted restrictions are on the account owner's and, in part, the beneficiary's actions; they do not restrict a creditor, either of the account owner or beneficiary, from voluntarily or involuntarily accessing the funds. Therefore, § 541(c)(2) does not exclude the College Account from property of the estate.

---

[10] Recall that § 541(c)(1)(A), quoted above, makes an interest in property held by the debtor property of the debtor's estate notwithstanding provisions in an underlying agreement or nonbankruptcy law that condition or restrict transfer of such interest. It is only when the property interest held by debtor is a beneficial interest in a trust, and when the restriction of transfer is enforceable under applicable nonbankruptcy law, that the property is excluded under subsection (c)(2).

MEMORANDUM OF DECISION - 8

### 3. The College Account is not excluded by § 541(b)(6)

Debtors rely primarily on § 541(b), which excludes certain property that would otherwise be property of the estate under § 541(a). BAPCPA added § 541(b)(6) to the list of exclusions found in § 541(b). Specifically, § 541(b)(6) states that property of the estate does not include:

> *funds* used to purchase a tuition credit or certificate or *contributed to an account in accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986 under a qualified State tuition program (as defined in section 529(b)(1) of such Code) not later than 365 days before the date of the filing of the petition in a case under this title*, but –
>
>   (A) only if the designated beneficiary of the amounts paid or contributed to such tuition program was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were paid or contributed;
>
>   (B) with respect to the aggregate amount paid or contributed to such program having the same designated beneficiary, only so much of such amount as does not exceed the total contributions permitted under section 529(b)(7) of such Code with respect to such beneficiary . . .; and
>
>   (C) in the case of funds paid or contributed to such program having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $5,475[.]

(Emphasis added).

Focusing on the term "not later than" and urging the Court to treat it as synonymous with "within," Debtors contend that "not later than 365 days before the date of the filing" as found in § 541(b)(6) means that "if funds were put into a

MEMORANDUM OF DECISION - 9

529 account LESS THAN ONE YEAR before the petition day, they are NOT property of the estate." Doc. No. 53 at 2. Debtors' interpretation of the Code lacks merit.

Construction of BAPCPA has required this Court to frequently address the canons of statutory construction.[11] The Court must start with the language of the statute. If the statutory language is plain, it must be enforced according to its terms, and this Court's analysis is complete unless such a reading would lead to an absurd result. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004); *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 749 (9th Cir. BAP 2001). To determine if a statute's language is plain, the Court must look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997); *see also Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (referencing the "cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it").

Here, the language of the statute may be a little cumbersome, but it is not ambiguous. The natural reading of § 541(b)(6) provides an exclusion from property of the estate for 529 accounts on a sliding scale. Assuming the qualifying

---

[11] *See*, *e.g.*, *Crawforth v. Ajax, LLC (In re Pheasant Cove, LLC)*, 08.2 I.B.C.R. 50, 2008 WL 187529 (Bankr. D. Idaho 2008).

MEMORANDUM OF DECISION - 10

conditions of § 541(b)(6)(A) and (B) are met, any such contributions made to a 529 account more than 720 days[12] prior to bankruptcy are fully excluded from property of the estate. Such contributions made between 365 and 720 days prior to bankruptcy are excluded from property of the estate to the extent below $5,475[13] but any such contributions over $5,475 in that same time frame remain property of the estate. Any amounts contributed within a year of bankruptcy are not excluded at all from property of the estate.[14]

As the rules of statutory construction make clear, context matters. *See Sorenson,* 475 U.S. at 860. The term "not later than" appears in the Code a number of times. If "not later than" is followed by a number of days "after" an event, then the requirement must occur *within* that time frame, and the term "not later than" establishes the last day for an action to occur. For example, § 521(a)(6)

---

[12] This 720-day period is 10 days shy of two years. Why that particular period was selected by Congress is unclear.

[13] As enacted, § 541(b)(6) placed the monetary cap at $5,000. However, pursuant to § 104(a), the cap is adjusted every three years and is now $5,475.

[14] Consistent with this Court's reading of § 541(b)(6), the Eighth Circuit Bankruptcy Appellate Panel determined that:

> under [§ 541(b)(6)], only funds placed into a § 529 account more than 365 days before filing are excluded, and, if the money was deposited between 365 and 720 days prepetition, the exclusion is limited to $5,000. It follows, then, that *even under the new law, money deposited less than a year prepetition, and funds in excess of $5,000 deposited between 365 and 720 days prepetition, are property of the estate.*

*In re Addison*, 368 B.R. 791, 795 (8th Cir. BAP 2007) (emphasis added) (reversed in part on other grounds). While *Addison* was a pre-BAPCPA case and its analysis of § 541(b)(6) is dicta, it is an accurate reading of the plain language of the Code.

MEMORANDUM OF DECISION - 11

requires an individual chapter 7 debtor to enter into a reaffirmation agreement regarding debts secured by, or to redeem, certain personal property "not later than 45 days *after* the first meeting of creditors." It further states: "If the debtor fails to so act *within* the 45-day period referred to in paragraph (6) . . . ." *Id.* (emphasis added).

Similarly, § 704(b)(1)(A) requires the U.S. Trustee's statement of abuse under the means test to be filed "not later than 10 days after the date of the first meeting of creditors" and § 707(b)(2) requires its motion to dismiss or convert based on that presumption to be filed "not later than 30 days after the date of the filing of the statement." The court in *In re Close*, 353 B.R. 915, 918 (Bankr. D. Kan. 2006), denied the U.S. Trustee's motion to dismiss based on a presumed abuse due to the U.S. Trustee's failure to timely file the § 704(b)(1)(A) statement "within" the required 10 days.[15]

On the other hand, where "not later than" is followed by a number of days "before" an event – as it is under § 541(b)(6) – then the required action must occur at least that many days prior to the event with "not later than" providing the

---

[15] Debtors cite, in support of their interpretation, *Barco v. Sch. Bd. of Pinellas County*, 975 So. 2d 1116, 1122-24 (Fla. 2008). That decision determined that a state requirement that a fee and cost motion be filed "within" 30 days of the filing of a judgment meant it had to be filed "not later than" 30 days after the judgment. *Barco* is consistent with *Close* and with this Court's reading of similarly phrased Bankruptcy Code provisions. Debtors' argument that *Barco* supports the proposition that the terms "within" and "not later than" are synonymous and interchangeable misreads the case and overstates its holding.

MEMORANDUM OF DECISION - 12

outside deadline for the action to occur. *See, e.g.,* § 521(e)(2)(A)(i) (requiring debtors to provide their tax returns "not later than 7 days before" the date first set for the first meeting of creditors); § 1125(f)(3)(B) (requiring a conditionally approved disclosure statement be mailed "not later than 25 days before" the confirmation hearing).

Section 541(b)(6)'s first clause provides a general rule that "Property of the estate does not include . . . funds . . . contributed to an account in accord with section 529(b)(1)(A) of the Internal Revenue Code of 1986 under a qualified State tuition program . . . not later than 365 days before the date of filing of the petition[.]" This therefore operates to exclude from property of the estate those contributions made "not later than 365 days before" – that is, made *more* than 365 days prior to filing.[16]

Thus, for funds to be excluded from property of the estate under § 541(b)(6), they must be contributed to a 529 account at least a year before the filing of the bankruptcy, and, even then, there is a monetary cap on the excluded funds contributed between 365 and 720 days prior to the filing.[17] It is only those

---

[16] As noted, this general exclusion is subject to the prerequisites of § 541(b)(6)(A) and (B). Under the parties' agreed record, the Court has no basis to doubt the College Account meets these requirements, nor have the parties argued these prerequisites have not been met.

[17] This further limitation on contributions made between 365 and 720 days prior to filing excludes only amounts *under* $5,475 from property of the estate. Debtors provided no cogent policy argument why Congress would impose a monetary cap on excluded contributions for the
(continued...)

MEMORANDUM OF DECISION - 13

funds contributed more than 720 days before filing that are excluded without a monetary limit.

Debtors should not be surprised by this interpretation as their College Account documents are consistent in addressing the timing and treatment of contributions to the College Account. The plan description states:

> Federal Bankruptcy law provides that Contributions to an Account that are made within 365 days of the filing of a bankruptcy petition by an Account Owner are part of the Account Owner's bankruptcy estate, and thus available to creditors.
>
> Contributions to all Accounts for a single Designated Beneficiary made between 365 days and 720 days before the filing of a bankruptcy petition by an Account Owners are not considered part of the Account Owner's bankruptcy estate to the extent the aggregate of such Contributions does not exceed $5,000 , and thus such Contributions that do not exceed $5,000 are not available to creditors, . . . .
>
> All Contributions to all Accounts for a single Designated Beneficiary made at least 720 days before the filing of a bankruptcy petition by an Account Owner are not considered part of the Account Owner's bankruptcy estate, and thus are not generally available to creditors.

Ex. 201 at 13.

In sum, Debtors' desired construction is not supported by the language of the statute, plainly read; any plausible policy rationale; or their own account documents.

---

[17] (...continued)
period from one year to (almost) two years before bankruptcy, which it clearly did under § 541(b)(6)(C), but no cap at all on excluded contributions in the year immediately preceding the filing, as Debtors contend the Code should be interpreted.

MEMORANDUM OF DECISION - 14

Here, all the funds contributed to the College Account were contributed within two weeks of the filing of the petition. The exclusion does not apply and those "funds . . . contributed" are property of the estate. The earnings on the contributions are also property of the estate. *See* § 541(a)(6).

### a. **Contributions by other than Debtors**

Of the principal amount in the College Account, $40,000.00 was contributed by a non-debtor, Patricia Bourguignon. Debtors suggest the source of the funds contributed to the College Account within a year of Debtors' filing is material to § 541(b)(6)'s application.

Section § 541(b)(6) makes certain funds contributed into a 529 account property of the estate and excludes others, but that distinction is based on the *timing* of contribution, not the *source* of the contribution. Indeed, during the September 3 hearing, Debtors conceded the Code makes no distinction based on the source of the contributions.

Debtors instead rely on the language of their College Account's plan description, which states that "Contributions . . . by an Account Owner" made within a year of filing bankruptcy are part of the account owner's bankruptcy estate and are available to creditors, but which does not mention a third party's contributions. *See* Ex. 201 at 13. The plan description's silence on the subject of third party contributions does not suggest differential treatment under § 541(b)(6).

MEMORANDUM OF DECISION - 15

More importantly, the description cannot alter the language and operation of the Code. The Court concludes that the source of the funds in the 529 account is immaterial.

**CONCLUSION**

Christian Bourguignon is the account owner of the College Account. Under § 541(a)(1), Debtors' interest in the College Account is property of the estate. Moreover, under the facts of this case, and the arguments presented by the parties, neither § 541(c)(2) nor § 541(b)(6) operate to exclude any portion of those funds. As the funds contributed to the College Account and earnings thereon are property of the estate and no exclusion applies, Trustee's motion for turnover, Doc. No. 52, will be granted. The Trustee may submit a proposed order.

DATED: September 23, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE